## WICHITA VISIBLE GASOLINE PUMP CO. et al. v. CLEAR VISION PUMP CO.

Circuit Court of Appeals, Eighth Circuit.
May 6, 1927.

### No. 7612.

**1. Patents ⬤⟶246—Combination patent Is not infringed by combination ·omitting one of elements, though same result is accomplished.**

A combination patent is not infringed by a combination which omits one of the elements, even though same result is accomplished, or another element is made to serve the purpose of the omitted element.

**2. Patents ⬤⟶328—15,432, claim 5, for liquid dispensing device, held not infringed.**

Crouse patent No. 1,304,028, May 20, 1919, reissued as No. 15,432, Aug. 22, 1922, claim 5, for liquid dispensing devices having transparent receptacle, held not infringed by device omitting one of elements of combination.

**3. Patents ⬤⟶136—Reissue patent Is permissible only on ground of inadvertence, accident, or mistake in original specifications.**

A reissue patent is permissible only on ground of inadvertence, accident, or mistake, by reason of which the specification as originally drawn is defective or insufficient, or the patent inoperative or claims narrower than actual invention.

**4. Patents ⬤⟶136—Patentee must not be guilty of fraud or deception to be entitled to reissue patent.**

To be entitled to reissue patent, patentee must be guilty of no fraud or deception.

**5. Patents ⬤⟶136—Reissue patent, to make claims embrace noninfringing device, is not justified, and, where matter is manifest from record, court may review question of inadvertence, accident, or mistake.**

If the only object of a reissue patent is to enlarge claims to embrace a noninfringing device, which has come into legitimate use, the reissue is not justified, ·at least on that ground alone, and court may review question of inadvertence, accident, or mistake, where the matter is manifest from the record.

**6. Patents ⬤⟶140—Whether application for reissue patent was made within reasonable time is generally question for court.**

Question whether an application for a reissue patent was made within a reasonable time is in most, if not all, cases a question of law for the court.

**7. Patents ⬤⟶138(1)—Reissue patent for liquid dispensing device held not applied for within reasonable time.**

Application for reissue patent for liquid dispensing device, made nearly 21 months after issuance of original patent, after others had perfected and were manufacturing a noninfringing device, which would be covered by the reissue patent, held not applied for within a reasonable time, nor ·on a legitimate ground.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Patent infringement suit by the Clear Vision Pump Company against the Wichita Visible Gasoline Pump Company and others. Decree for plaintiff (9 F.[2d] 996), and defendants appeal. Reversed and remanded, with directions to dismiss.

Harry W. Hart, of Wichita, Kan., and Delos G. Haynes, of St. Louis, Mo. (Glenn Porter and Enos E. Hook, both of Wichita, Kan., on the brief), for appellants.

A. J. O'Brien, of Denver, Colo., and Hal M. Black, of Wichita, Kan. (Noble, Ayres, McCorkle & Fair, of Wichita, Kan., on the brief), for appellee.

Before LEWIS and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. May 20, 1919, letters patent No. 1,304,028 were issued to one Emory Crouse; this patent is now the property of appellee, a Kansas corporation having its principal office and place of business at Wichita in that state. The patent was for a ǀgasoline dispensing device. The object of the invention, so far as is pertinent to this inquiry, is thus stated in the specification:

"This invention relates to liquid dispensing devices, particularly to those of the type adapted for dispensing gasoline and has for its object the provision of a device embodying a transparent receptacle, graduated throughout its length, into which the gasoline is first pumped and then subsequently withdrawn; the quantity drawn off being easily seen by the purchaser upon observing the difference in the levels of the liquid within the transparent receptacle, this arrangement preventing fraudulent measurement by the dealer.

"An important object is the provision of a device of this character provided with means whereby the initial quantity of liquid within the transparent receptacle will always be the same, and be automatically regulated, any excessive amount pumped thereinto automatically returning to the storage tank with which the device is associated.

"A further object is the provision of a device of this character provided with means whereby all the gasoline may be drained back into the storage tank, and whereby the various portions may be drained sepa-

rately, in order that sediment may be removed."

The single claim of the patent reads thus:

"A liquid dispensing device comprising a transparent container provided with graduations, a member disposed below and communicating with said container, a pipe extending through said member in spaced relation to the walls thereof to provide an annular chamber and extending into and terminating at the upper portion of said container, a valved discharge pipe communicating with said chamber, a supply pipe communicating with said chamber, means for supplying liquid under pressure into said supply pipe, and an overflow pipe communicating with said first-named pipe, and valved means establishing communication between said chamber and said last-named pipe."

Some time after this patent was issued, appellants began the manufacture of a gasoline pumping device which omitted the annular chamber, described and emphasized as an element in the specification and claim of the patent in suit. Appellants' first pump was completed in September, 1920. In July of that year appellants began to build a factory and to install the necessary machinery in the city of Wichita for the purpose of manufacturing and selling to the public generally their said dispensing device, of which appellee complains. On or before February 8, 1921, appellants had in operation a factory of substantial capacity, with ten salesmen selling their output throughout the states of Kansas, Oklahoma, and Illinois. A considerable number of orders had been taken, and a substantial number of pumps had been manufactured and shipped.

February 8, 1921, appellee filed its application for a reissue patent, which was granted, and the reissue made, on August 22, 1922. The reissue patent was identical with the original in specification and drawings. It contained six claims; the fifth being the same as the single claim of the original patent. The object of the reissue was to cover all forms of structure which might be included within the scope of the original invention. The first four claims of the reissue patent omitted as an element the annular chamber specified in claim 5, and in the one and only claim of the original patent. Shortly after the reissue this suit was filed. While the bill charges infringement of the reissue patent only, it is strongly contended that the original patent likewise is infringed.

As has been stated, the original patent was issued May 20, 1919. The application for reissue was filed February 8, 1921, and the reissue made August 22, 1922. It will thus be seen that the application for reissue was made nearly 21 months after the issuance of the original patent. The defenses are: First, invalidity; second, noninfringement. They will be considered in their inverse order. Both the master, to whom the case was referred, and the trial court, found the patent to be valid, and that appellants' device infringed the single claim of the original patent, and also the first five claims of the reissue patent. In appellants' structure a prominent element of claim 1 of the original patent and claim 5 of the reissue is omitted; this is the annular chamber underlying a member disclosed below and communicating with a superimposed graduated container. It is conceded that this annular chamber is a specified member and element in the claim of the original patent; but it is contended, as the fact is, that the owner of the patent, even before the reissue, had abandoned that construction, and that the annular chamber is not essential to the operation of the patented device.

It is true that nowhere in the specification is this annular chamber described as discharging any function, except to form a receptacle into which, and from which, certain drain pipes pass. In fact, the transparent container, the member disclosed below and communicating with said container, and this annular chamber, all open one into another, and contain the gasoline pumped up from the reservoir. It is the contention of the appellee that the second of these three members, described in the specification as an upwardly flaring casting, upon the upper edge of which rests the cylindrical member of glass, or transparent container, is the equivalent, or, at least, satisfies the claim and function, of the annular chamber; that defendants' device has this upwardly flaring casting, and in other respects is the same, under the doctrine of equivalents, as the patented device. It is conceded by appellants that their machine is covered by claim 1, and perhaps by other claims, of the reissue, but not by claim 5, nor by the claim of the original patent, because of the omission of this annular chamber.

Appellee is confronted at the outset by the rule announced by Mr. Walker in his work on Patents (5th Ed.) par. 349:

"Omission of one element or ingredient of a combination covered by any claim of a patent averts any charge of infringement based on that claim, whether or not the omitted ingredient was essential to the combina-

tion of the patent; and whether or not it was necessary to the operativeness of the device; and it makes no difference that another element is made to do the work of itself and of the omitted element. A combination is an entirety. If one of its elements is omitted, the thing claimed disappears. Every part of the combination claimed is conclusively presumed to be material to the combination, and no evidence to the contrary is admissible in any case of alleged infringement. The patentee makes all the parts of a combination material, when he claims them in combination and not separately."

[1] This text, which states the best known and most frequently applied of all the rules which pertain to infringement, is overwhelmingly supported by the cases. Prouty v. Ruggles, 16 Pet. 336, 341, 10 L. Ed. 985; Signal Co. v. Signal Co., 114 U. S. 87, 5 S. Ct. 1069, 29 L. Ed. 96; Fay v. Cordesman, 109 U. S. 408, 421, 3 S. Ct. 236, 27 L. Ed. 979; McClain v. Ortmayer, 141 U. S. 419, 425, 12 S. Ct. 76, 35 L. Ed. 800; Wright v. Yuengling, 155 U. S. 47, 52, 15 S. Ct. 1, 39 L. Ed. 64; Hubbell v. United States, 179 U. S. 77, 82, 21 S. Ct. 24, 45 L. Ed. 95; Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 25 S. Ct. 697, 49 L. Ed. 1100; Adam v. Folger (C. C. A. 7) 120 F. 260; Incubator Co. v. Teabout (C. C. A. 2) 215 F. 109; Underwood Typewriter Co. v. Royal Typewriter Co. (C. C. A. 2) 224 F. 477; Jewell Filter Co. v. Jackson (C. C. A. 8) 140 F. 340.

In the latter case Judge Sanborn says: "The absence from a device that is alleged to infringe a patented combination of a single element of that combination is fatal to the claim of infringement."

[2] The authorities cited conclusively establish want of infringement of the original patent and of claim 5 of the reissue patent by defendants' device. It is conceded that defendants' structure would infringe claim 1 of the reissue patent, if that reissue is valid and can be made to apply to the situation presented. The provision of the Revised Statutes (section 4916 [Comp. St. § 9461]) upon the subject of reissue, so far as pertinent, is thus quoted by Mr. Walker in paragraph 254 of his work:

"Every patent so reissued, together with the corrected specification, shall have the same effect and operation in law, on the trial of all actions for causes thereafter arising, as if the same had been originally filed in such corrected form."

It is conceded that a reissue properly allowed will support broadened claims, provided the specifications and drawings embodying the invention are left intact; in other words, provided the invention itself is not expanded, and if the broadened claims fall legitimately within the invention originally made. Mr. Walker further says:

"It also follows, from said statutory law, that persons who use or sell, after the date of a reissued patent, specimens of the thing covered by it, are liable as infringers, even though those persons made or bought, or used those specimens before that date, and when, on account of the omission to cover them by the original patent, they had a legal right to appropriate the invention."

Is, then, this reissue a valid one, with the effect of rendering the defendants an infringer from and after the date of the reissue patent, to wit, August 22, 1922? In Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658, it was held:

"That this court will not review the decision of the Commissioner upon the question of inadvertence, accident, or mistake, unless the matter is manifest from the record; but that the question whether the application was made within a reasonable time is, in most, if not in all, such cases a question of law for the court."

The court further said that: "In the case of Mahn v. Harwood, 112 U. S. 354, 358 [6 S. Ct. 451, 28 L. Ed. 665], a patent reissued nearly four years after the date of the original patent was held to be invalid as to the new claims, upon the ground of unreasonable delay in applying for it, the only object of the reissue being to enlarge the claims."

It was also pointed out that in the large number of cases which had come before the Supreme Court since the case last mentioned, in which reissues have been held to be invalid, they were so held upon the ground either that the appellee had been guilty of inexcusable laches, or that circumstances had occurred since the granting of the original patent which made the reissue operate harshly or unjustly to the defendant in the case. Thus, in Parker & Whipple Co. v. Yale Clock Co., 123 U. S. 87, 8 S. Ct. 38, 31 L. Ed. 100, there was a delay of only one year and eight months, but it appeared that the improvements not covered by the original patent had been brought into use by others than the patentee before the issue was applied for. In Coon v. Wilson, 113 U. S. 268, 5 S. Ct. 537, 28 L. Ed. 963, this language occurs:

"A reissue was applied for a little over three months after the original patent was granted; but the patentee waited until the defendants produced their device and then

applied for such enlarged claims as to embrace [this device] which was not covered by the claim of the original patent; and * * * it [was] apparent, from a comparison of the two patents, that the application for a reissue was made merely to enlarge the scope of the original."

In Wollensak v. Reiher, 115 U. S. 96, 101, 5 S. Ct. 1137, 29 L. Ed. 350, it was observed that the settled rule of decision is that, if it appears, in cases where the claim is merely expanded, that the delay has been for two years or more, it is adjudged to invalidate the reissue, unless the delay is accounted for and excused by special circumstances which show it to have been not unreasonable. This does not mean, however, that a reissue is unassailable, if applied for within two years.

This language of Mr. Justice Grier in Burr v. Duryee, 1 Wall. 531, 17 L. Ed. 650, quoted with approval in Parker & Whipple Co. v. Yale Clock Co., 123 U. S. loc. cit. 97, 8 S. Ct. 43, 31 L. Ed. 100, has application:

"The surrender of valid patents, and the granting of reissued patents thereon, with expanded or equivocal claims, where the original was clearly neither 'inoperative nor invalid,' and whose specification is neither 'defective nor insufficient,' is a great abuse of the privilege granted by the statute, and productive of great injury to the public. This privilege was not given to the patentee or his assignee in order that the patent may be rendered more elastic or expansive, and therefore more 'available' for the suppression of all other inventions."

[3-6] The ground upon which a reissue is permissible is inadvertence, accident, or mistake, by reason of which the specification as originally drawn is defective or insufficient, and the patent inoperative, or the claims are narrower than the actual invention of the patentee. Of course, the patentee must be guilty of no fraud or deception. If the only object of the reissue is to enlarge the claims, in order to embrace a noninfringing device which has come into legitimate use, the reissue is not justified, at least on that ground alone, and the court may review the question of inadvertence, accident, or mistake, where the matter is manifest from the record; and this also bears upon the question of whether application was made within a reasonable time, which is in most, if not all, of such cases a question of law for the court.

[7] In the case at bar it is evident that the narrowness of the original claim was not brought about by accident, inadvertence, or mistake, nor was the specification defective or insufficient, and the patent inoperative. The patentee declared with great particularity exactly what he sought to appropriate and withdraw from public use. It was not until appellee discovered appellants' device that it took any steps to make its patent cover appellants' structure. It called in its patent attorney, who did not venture a suit upon the original patent, although now claiming that a cause of action existed, and that the reissue was procured only out of abundance of caution and as against other infringers. Meantime appellants had developed a plant and a business, relying upon the limitations of the Crouse invention as it was disclosed. We think upon the face of the record, at least as affecting these appellants, the reissue was not applied for within a reasonable time, nor upon a legitimate ground. Its object was to stifle competition from this source. For this reason we think appellants' device does not infringe the claims of the reissue patent.

Appellants insist that both the original and the reissue patents in suit are invalid, in view of the disclosures of the prior art. A number of patents are cited in support of this contention. By stipulation patent No. 262,561, issued to George A. Bennett, August 15, 1882, is "submitted to this court for final consideration and disposition in this cause, without remanding the cause to the District Court." That patent was before neither master nor trial court; this is to be regretted, because, if the customary effect is to be accorded to disclosures of the prior art, we are unable to see how the patents in suit can be sustained in view of this patent to Bennett. The Bennett structure responds in every particular to the language of the single claim of the original patent and to the first five claims of the reissue patent. If not in the same art, it is in one, at least, closely kindred and analogous. However, in view of the conclusion we have reached upon the matter of infringement, it is unnecessary to expand this opinion by further consideration of this defense.

The decree below should be reversed and remanded to the lower court, with directions to dismiss the bill. It is so ordered.