ECLIPSE MACH. CO. et al. v. HARLEY-DAVIDSON MOTOR CO. et al.

(Circuit Court of Appeals, Third Circuit. May 25, 1918. Rehearing Denied July 20, 1918.)

No. 2344.

1. PATENTS ⬦328—VALIDITY AND INFRINGEMENT—MOTORCYCLE CLUTCH.

Ellett patents, reissue No. 13,554 (original No. 982,042), No. 1,018,890, and No. 1,071,992, each for a clutch for motorcycles, cover combinations, the fundamental elements of which were old in separate use, but disclose patentable invention in the combinations. The reissue patent *held* not infringed, and both the others infringed.

2. PATENTS ⬦36—INVENTION—CHANGE OF POSITION OF MECHANISM.

A change of mechanism from one position to another, whereby a problem is solved and new and useful results are obtained, is an indication of invention.

3. PATENTS ⬦75—VALIDITY—PRIOR PUBLIC USE.

Use of an invention relating to mechanism of a motorcycle, which was necessarily public, but which was not commercial, but solely for the purpose of experimentation, and testing its efficiency, is not such a public use as will invalidate a patent applied for more than two years thereafter.

4. WORDS AND PHRASES—"MOTORCYCLE."

A "motorcycle" is a bicycle propelled by a gasoline engine located in the frame between the wheels.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Motorcycle.]

5. WORDS AND PHRASES—"CLUTCH."

A "clutch" is a device introduced in the transmission, some place between the mechanism in which power is created and the mechanism to which it is applied, and serves to make and break the connection between the two.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by the Eclipse Machine Company and another against the Harley-Davidson Motor Company and another. Decree for defendants, and complainants appeal. Reversed.

For opinion below, see 244 Fed. 463.

Archibald Cox and Robert W. Byerly, both of New York City, and C. L. Sturtevant, of Washington, D. C., for appellants.

J. Bonsall Taylor and E. Hayward Fairbanks, both of Philadelphia, Pa. (W. S. Hodges, of Washington, D. C., of counsel), for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an appeal from a decree dismissing a bill charging infringement of three closely related patents for motorcycle clutches. They are re-issue No. 13,554 (original No.

———

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

982,042 of January 17, 1911); No. 1,018,890 of February 27, 1912; and No. 1,071,992 of September 2, 1913, issued to Frederick S. Ellett, and are conveniently referred to throughout the record as the re-issue, second patent, and third patent. Of the several claims in issue the District Court found claims 1, 4 and 5 of the re-issue, and claims 1, 8, 11 and 12 of the second patent not infringed; and claim 1 of the third patent invalid because the date of invention was more than two years prior to the application for the patent. R. S. § 4886 (Comp. St. 1916, § 9430). The complainants appealed.

The suit is between the patentee and his manufacturing licensee and an alleged manufacturing infringer and its selling agent.

[1] The inventions of the three patents relate to clutches for motorcycles, each containing in variations of combination some of the same elements.

[4, 5] A motorcycle is a bicycle propelled by a gasoline engine located in the frame between the two wheels. The power of the engine is transmitted to the rear or traction wheel by some sort of transmission or connection. A clutch is a device introduced in the transmission some place between the mechanism in which power is created and the mechanism to which it is applied and serves to make and break the connection between the two.

In the art before Ellett, the transmission consisted mainly of a belt or one or more chains connecting the engine shaft to the rear wheel so that when one moved the other moved and when one stopped the other stopped. These direct connections, being fixed in the sense of not being detachable, produced obvious difficulties in riding and created dangers to the rider. They gave to the frame of the motorcycle—and to the body of the rider—the shock or jerk of each explosion of the engine. This caused discomfort and eventually fatigue. They made the start a dangerous and sometimes an adventurous feat, as the speed of the motorcycle (when raised at a standing start or after a pedal start) responded exactly and abruptly to the speed of the engine. The stop involved the difficulty of braking the engine long enough and hard enough to overcome the momentum of the engine as well as the momentum of the vehicle.

Direct transmission of power from engine to traction wheel made riding over sandy, muddy, rutty, and hilly roads difficult and dangerous. This was due to the fact that in meeting the varied problems of road conditions, quick changes, both in lowering and raising speed, are necessary. In direct transmission there was no way to slow down the motorcycle without slowing down the engine. In thus lowering—and also in raising—the speed of the motorcycle by brake and engine control alone, the drag of the road on the traction wheel became at times greater than the power of the engine, causing the motor to stall, thereby stopping the movement of the vehicle and interrupting the pleasure of the rider. To avoid stalling, the natural inclination of the rider was to overcome road problems by maintaining speed even at the risk of falls and injury.

To meet these problems the art resorted to several expedients. These were compensating sprockets and belt tighteners or idlers which relieved somewhat the rigidity of the direct connection. There were

also invented several clutches having for their object the connection and disconnection of the power transmission. These, however, were not practically and commercially successful.

Finally, Ellett, a young machinist employed by the complainant company in its business of manufacturing coaster brakes and other bicycle appliances, invented the clutches of the three patents in suit. His inventive conception lay in placing in the hands of the rider a control over the motorcycle different from and in addition to single engine control by making a break in the transmission, whereby power can be applied or withdrawn, not abruptly at the caprice of the engine as in direct transmission, but by degrees at the will of the rider. The result operatively is an increase in the endurance of the motorcycle and a decrease of explosive shocks to the motorcycle and to its rider, a reduction of the likelihood of stalling, and, in meeting varied road conditions, the removal of the operation of the motorcycle from the arbitrary mechanical control of the motor to the instinctive control of the rider. The result commercially, it is claimed and not denied, is that every motorcycle now sold in this country (including those of the defendant) has a clutch embodying the fundamental combination of Ellett's invention as disclosed in his second and third patents. The motorcycle output for 1914 was 68,000, of which the defendant sold 16,000. The clutches on all these motorcycles, except those made by the defendant, were either purchased by their makers from the complainant company or were manufactured under license. The defendant, admitting that its clutch contains the elements of the Ellett clutch, asserts its right to manufacture and sell it without tribute to Ellett on the ground that his patents are invalid in view of the prior art, or, if valid, their claims, when properly construed, do not cover the defendant's construction.

Each claim of the three patents in suit is a combination claim containing the same functional elements, possessing essentially the same characteristics, but differing in some structural details and in one important functional operation. The invention, therefore, may be considered first as a whole, and its differences, as appearing in the several patents, may be discussed later.

Ellett's inventive combination consists fundamentally of three elements, for no one of which he claims invention. Clutches, friction clutches, friction disc clutches were old in many arts, and friction disc motor clutches were not entirely new in the motorcycle art. Invention, if any, is to be found in the combination of elements comprising the unitary structure. These are:

(1) One rotary member mounted upon another rotary member;

(2) Multiple flat friction discs alternately attached to each rotary member; and

(3) Screw cam (nut and screw) which (a) is nonrotating and (b) is connected with the friction discs in a manner to make or break the transmission of power by accurately controlling the amount or degree of connection or slippage of the rotating discs.

The chief characteristics of the invention are that the two parts, carrying alternate layers of discs, which by frictional contact and the release thereof cause the transmission or withdrawal of power from

motor to wheel, are both rotary parts, and that one is mounted upon the other in distinction from the customary mounting side by side on the same shaft. The mounting of one rotary member upon the other (each carrying its own friction discs) instead of mounting them side by side, met an absolutely essential requirement of the motorcycle builder in saving practically one-half in the length of the shaft, in reducing the over-all width of the machine, and in keeping the clutch practically within the vertical plane of the motorcycle. This is a problem peculiar to a motorcycle and of course is not present at all in an automobile with its abundance of space.

[2] A change of mechanism from one position to another, whereby a problem is solved and new and useful results are obtained, is an indication of invention. Mead-Morrison Mfg. Co. v. Exeter Mach. Co., 225 Fed. 489, 140 C. C. A. 531.

The next element of the invention is multiple friction discs as distinguished from cone discs. The peculiarity of the multiple disc type is that all the discs are free to move laterally so that a given weight —say 10 pounds—applied to the pile of discs produces a pressure of 10 pounds on each of the entire series of surfaces in contact. By merely multiplying the number of discs, the same 10 pounds can be made to give a gripping force of 20, 30, 40, 50 and 100 pounds, and so on, according to the number of discs, the applied pressure of 10 pounds remaining the same. In a motorcycle where the parts are light and the space is limited there is an advantage in multiplying the number of thin discs over increasing the initial pressure. The gripping pressure of friction discs does not affect the ease of engaging and disengaging the discs. This is an advantage over the cone clutch, to disengage which it is necessary to apply force sufficient to overcome the friction caused by the wedging pressure of one gripping surface on the other. The grip of multiple discs is released simply by releasing the applied force.

· While Ellett cannot claim the invention of friction discs, he is to be credited with selecting discs of the type that all motorcycle makers now use to the exclusion of all other types.

The remaining element is the screw or screw-cam, which serves to actuate the discs. Simple as it is—being nothing more than a screw turned with nice calculation as to its function—its importance to the art is recognized by every motorcycle manufacturer using a clutch. There seems to be no substitute for it. Lightly as the defendant speaks of it, it nevertheless clings to it. It is found to be an actuating device of sufficient stability to prevent variations of pressure on the discs, and, consequently, undesirable variations of the speed, caused by the jar and shock incident to motorcycle riding. It is also sufficiently accurate to permit just the range of disc slippage required to give the rider the exact power he desires.

Fine gradations of pressure and slippage to produce correspondingly fine gradations of movement, extending to less than $1/16$ of an inch on the discs, cannot, of course, be made by the joggling hand of the rider and can only be made by a disc actuator that has precision of pressure. Other actuators, such as face cams, forks, levers, apparently, will not do. The pitch of the screw can be fixed with extreme

accuracy and its actuation of the discs initially or after wear can be nicely calculated. If a screw is the only thing that will produce this result, there is merit akin to invention in finding that thing, simple as it is.

The operative utility of a clutch combining these three correlated elements, briefly stated, is found in the ability of the rider to drive the engine at one speed and the traction wheel at another, and to move the engine without moving the wheel at all, and, conversely, to move the wheel without moving the engine. Such control over the power and traction of a motorcycle by which its power and traction mechanism can be operated independently or interdependently at will, makes the rider a part of the vehicle in the sense that in learning what it can do, he soon learns to ride it under varied road conditions with the same involuntary exercise of will or instinct that a person employs in walking and running. If Ellett was the first to make this possible or practicable (and such he seems to be), he has a claim to invention, even though in doing it he combined means separately found in the art.

In view of the importance of this case to the motorcycle art and of the very serious consequences of a decision adverse to the defendant, one of the largest producers of motorcycles in the world, we have given the immense record in this case and the extended art cited against the patents full and careful consideration at the cost of no little labor. We do not think it necessary to the decision to review in this opinion the testimony and the prior art or to set forth the mechanical details of the inventions in suit. It will suffice to state their fundamental elements and differences with a brevity consistent with a proper understanding of their functions.

In approaching a separate consideration of the three patents it is to be noted that in the clutch of each patent there are the same three elements—superimposed rotary members, multiple friction discs alternately attached to each rotary member, and screw cam actuating means. In all, the function of the rotary members is the same; there is a variation in the function of the screw cam with a reflected variation in the function of the friction discs.

In the clutch of the Ellett re-issue, the screw actuator operates (by connecting mechanism) directly on the rotary members, causes a compression of their attached friction discs and makes a connection whereby power is transmitted from motor to wheel. A release of the actuator separates the discs and breaks the connection and transmission. Gradations of contact and power transmission are made by the hand of the rider on the actuator lever. The result operatively is that the change of power is imperfect except when made by an expert rider, and the result mechanically is the breaking of ball-bearings when pressure is inexpertly applied.

For these reasons this clutch was not commercially successful. About 500 were made when their manufacture was discontinued.

At about the time of the invention of the clutch of the re-issue (March, April or May, 1908), Ellett invented the clutches of the second and third patents. As they were mechanically more complex than the first and more costly to manufacture, he laid them aside in his employer's model room while the clutch of the re-issue was being

tried out.   Upon its failure, the clutches of the second and third patents were taken out and patented three or four years after they had been invented, tested, and found satisfactory.

The clutch of the second patent has the same three fundamental elements as the clutch of the re-issue.   The function of the rotary members is the same, the function of the multiple discs is somewhat different, but the function of the screw actuator, while still that of an actuator, is reversed.   This reversal is not a reversal of mechanism resulting in the same function, but it is a reversal of mechanism which produces a different function.   Instead of moving the actuator by hand to make the disc contact and power transmission, as in the clutch of the re-issue, there is provided in the clutch of the second patent a plurality of springs which normally hold the discs in a gripping engagement or constant contact, whereby complete transmission of power is effected and maintained.   The actuator in the clutch of the second patent is used not to make but to break contact of the discs, and when moved by hand it acts in opposition to the springs and operates to break the transmission.   This organization obviates the consequences of inexpert transmission of power and of breakage incident to the clutch of the re-issue and makes the improved clutch as easily operated by inexpert as by expert riders.   This change established the success of the invention.

The clutch of the third patent differs essentially from that of the second only in the position of the springs, which are mounted in the end of one rotary member so as to make the springs accessible and easily adjustable.   Typical claims of the re-issue, second, and third patents are quoted in the margin.[1]

[1] Claim 1 of re-issue, No. 13,554:

"The combination with a rotary shaft, of a hub fastened upon one end thereof, a concentric wheel mounted for free movement upon said hub, one or more friction disks connected to the hub positioned in a chamber provided therefor between the hub and wheel and adapted to engage a friction member or members on the wheel, a fixed nut mounted concentrically at the outward end of the hub, a screw passing through said nut, means for imparting a turning movement to said screw, and means rotating with the hub and actuated by the screw whereby the inward movement of the screw will be imparted to the friction disk or disks."

Claim 1 of No. 1,018,890 (second patent):

"The combination with a rotary member, of a concentric wheel mounted for free rotation on said rotary member, a friction disk carried by said wheel on the interior thereof, a plurality of friction disks carried by said rotary member and engaging said first mentioned disk, a plurality of springs for normally holding said disks in gripping engagement, and means independent of the rotations of said wheel and said rotary member for actuating the springs to release the clutch members and comprising a fixed cam member, a revoluble cam member and a thrust bearing."

Claim 1 of No. 1,071,992 (third patent):

"In a clutch for motorcycles, the combination of a stationary member, a rotary member mounted on said stationary member, a wheel rotatably mounted on said rotary member, a plurality of friction disks adapted to form a driving connection between said rotary member and said wheel, a plate arranged on the outer end of said rotary member, an axially movable disk carried by said rotary member, a plurality of springs arranged between said axially movable disk and said plate and adapted to normally press said friction disks into gripping engagement, and means independent of the rotation of said rotary member and said wheel adapted to move said axially movable disk so as to release said friction disks."

After Ellett's first patent had been issued and the application for the second had been filed, and after the complainant licensee had put upon the market the multiple spring clutch of the second and third patents, the defendant Harley-Davidson Motor Company, in the summer of 1911, manufactured for its 1912 motorcycle model a clutch which it itself admits contains the elements of the Ellett clutches, and which the learned trial judge found bears "more than a substantial likeness" to the clutch of Ellett's third patent.

Being charged with infringement, the defendant presents several grounds of defense, all of which we have very carefully considered, and but two of which require discussion in this opinion.

The first defense is, that under a proper interpretation, the claims of the Ellett patents, considered with reference to their character and scope, are invalid because anticipated by the prior art and by prior uses; or, if valid, they are not sufficiently broad in view of the prior art to cover the organization of the alleged infringing device. We shall postpone the consideration of the last proposition and dispose of the first two by holding the claims of the three patents here in issue valid as showing patentable invention. As against the defense that the re-issue is invalid because of "new matter" or that rights of the defendant intervened during the patentee's delay in applying for it, we hold the re-issue valid and controlling upon the defendant. Whether Harley improperly acquired knowledge of the Ellett clutch and incorporated it in the alleged infringing clutch manufactured by the defendant—an issue raised by the plaintiff and joined by the defendant—is not necessary to decide in view of our conclusion upon another phase presently to be stated. Certain it is that the circumstances show that at the time the defendant was developing and testing its clutch, Harley was not ignorant of the Ellett invention.

The defendant charges further that the second and third patents, even though disclosing patentable invention, were invalidly issued because of public use more than two years prior to the filing of the applications. With this contention, so far as it is applied to the third patent, the trial court agreed. We are constrained to disagree with the learned trial judge in holding the third patent invalidly issued, not upon the law applicable to the question, but upon his finding of fact. He stated in his opinion that "the invention had been perfected and the device put to use not only before the Harley filing date but so long before his own application" that the statutory time given Ellett in which to apply for a patent had passed, and that, consequently, he prima facie had lost his right to a patent.

In so ruling the learned trial judge applied to the facts the unquestioned law, that:

"Abandonment to the public, or such dedication to be inferred from public commercial use, is inconsistent with the claim of an exclusive proprietary right and is sufficient ground for the denial of a grant for a patent. When more than two years elapse after the invention is made, the inventor must assume the burden of excusing the delay and overcoming the presumption of dedication from commercial use."

[3] It is upon the evidence excusing the delay and overcoming the presumption of dedication, the burden of which the patentee assumed,

that we differ with the learned trial judge in our conclusions. We think that Ellett has sustained the burden, which the law imposed upon him, by showing very satisfactorily, indeed, very certainly, that there was not a commercial use of the invention and there was not a public use of it more than two years prior to the filing of applications for patents, and that such use as there was, though in public, was purely experimental and was necessary to test out his invention by long rides and by different riders. Elizabeth v. Paving Co., 97 U. S. 126, 24 L. Ed. 1000; Beedle v. Bennet, 122 U. S. 71, 76, 77, 7 Sup. Ct. 1090, 30 L. Ed. 1074; Harmon v. Struthers (C. C.) 57 Fed. 642. These tests, when made, demonstrated that the device was satisfactory and complete. It was not patented at that time because the inventor neither had money nor could he borrow money with which to procure patents, and for the additional reason that he could induce no one to manufacture the clutch because of its complexity and cost at a time when clutches were not generally known or demanded by motorcycle riders. It was after the clutch of the re-issue had been tried and had failed, and *before* the defendant came upon the market with the Harley clutch that Ellett succeeded in enlisting the interest of his employer and in obtaining the manufacture of the clutch and its offer to the trade. He then promptly applied for and obtained the second and third patents. There was a delay of from three to four years between the invention of the clutches of the second and third patents and the filing of applications for patents. Without repeating the large amount of testimony upon this issue, it will be sufficient to state that we are of opinion that Ellett did not by any affirmative act or public use of his invention abandon it or dedicate it to the public, and that any presumption arising from his delay in patenting his invention has been met and overcome by evidence in quantity and character sufficient to satisfy the law in this regard.

We hold that the second and third patents were not invalidly issued upon the ground assigned.

The remaining issue is infringement. This involves an interpretation of the claims of each patent to determine whether in view of the prior art they are broad enough to cover the organization of the alleged infringing device.

The plaintiffs maintain that the claims of the re-issue (of the first patent) are for a pioneer invention consisting of three fundamental elements, and as these elements are found in the defendant's device, it infringes. On first view this would seem to be true. It would certainly be true if the defendant employs the three fundamental elements of the re-issue (which it admits using) to perform the functions and to produce the results they perform and produce in the clutch of the patent. If the defendant's device does this and does more by infringing the improved mechanism of the second and third patents, it would still infringe the re-issue. But if the three fundamental elements of the re-issue are present in the defendant's device, yet are there employed in a way different from that taught by the re-issue, and are caused to function in a way not suggested by its disclosures, and to produce results wholly different from those intended by the invention, then the invention of the re-issue is not of that primary and fundamental type which would hold the defendant to infringement.

It should be remembered that the claims of the re-issue are combination claims containing elements with clearly disclosed functions, the essential characteristic of which, as we have stated repeatedly, is the pressure of the screw cam on the rotary members to make contact and the release of the pressure to break contact. In the organization of the defendant's clutch, contact (with power transmission) is obtained (and maintained) by spring pressure on the discs, not by screw pressure manually applied as in the clutch of the re-issue, and contact in the defendant's clutch is broken by pressure of the screw cam or its equivalent, not by the release of pressure of the screw cam as in the clutch of the re-issue. This difference in operation reflects the difference in mechanism. It is not a mere reversal either of mechanism or function, but it is a positive difference, as the functions of two of the three elements in the defendant's clutch are not suggested by the disclosures of the re-issue. A very good evidence of this is, that when Ellett conceived a new function for his three elements in co-action with springs (similar to the organization of the defendant's clutch subsequently made) he was awarded a patent for it on the theory not that it was an improvement upon the clutch of the re-issue but that it was a conception of something novel and something different from the clutch of the re-issue, and therefore involved invention.

Moreover, if in the defendant's clutch the spring pressure means were omitted, the three elements of the re-issue would remain but they would not co-act in the manner disclosed by the re-issue or in any other manner. In other words, the clutch would not work. Similarly, it would not infringe. Therefore, while the defendant has taken the three elements of the re-issue combination claims (each being old), and has used them, it has not used them in the way in which they were used in the combination device of the re-issue. And it is only in the combination that invention is found. What the defendant did was to take the three old elements (either from Ellett or from the art, it makes no difference which), and give one—the screw cam—an entirely new function, cause another—the friction discs—to operate in an entirely different way, and employ the remaining element (the superimposed rotary members) in the way disclosed by the invention. This so utterly breaks up the combination that in our view the defendant's clutch does not infringe the combination claims of the re-issue.

But in avoiding infringement of the re-issue the defendant has fallen into infringement of the second and third patents. This is due to the fact that it has taken the same three elements found in all the patents and has used them or their equivalents, not differently, but in the way claimed by the second and third patents.

The Harley clutch appears by the exhibits to be mounted on the rear wheel of the motorcycle, although manifestly it is sometimes mounted on a counter-shaft between the motor-shaft and the rear wheel. The reissued patent shows the Ellett clutch mounted on the motor-shaft; the third patent on a counter-shaft. This difference in the positioning of clutches, the defendant maintains, requires a substantial difference in their organization. It maintains, further, that the claims of the patents relate only to a clutch on the motor-shaft or

on a counter-shaft, while its clutch is on neither, being mounted on the hub of the traction wheel. It therefore seeks to limit the claims of the patents to a clutch on the motor-shaft and on a counter-shaft. Without repeating the discussion upon the claims of the patents, we are satisfied that they are sufficiently broad to cover clutches regulating the transmission of power located on the traction wheel as well as on the motor-shaft or on a counter-shaft. The clutch of the patents is so arranged functionally that it makes no difference where it is placed, that is, whether on the motor-shaft, on a counter-shaft, or on the traction wheel, for the reason that it makes no difference to which rotary member of the clutch power is first applied. The co-acting functions of the two are identical whichever is the power-giving and the power-taking member in the passage of power from motor to wheel. If the power is given to the inner rotary member directly from the motor-shaft, it is transmitted by compression of the friction discs to the outer member, and thence carried to the traction wheel. Or, if the clutch be placed upon the traction wheel, it is transmitted from the motor-shaft by chain to the outer rotary member of the clutch, and then carried through the compressed discs to the inner member where it is conveyed to the hub of the traction wheel. Or, if placed on a counter-shaft, the power coming from the motor-shaft is first carried to the rotary member with which it is connected by chain and then similarly conveyed through the discs by friction pressure to the other member, whichever it may be, and is thence carried by chain to the traction wheel. Therefore, in principle, the friction clutch of the invention operates equally well wherever placed. We are of opinion that infringement is not avoided by placing the clutch on the wheel instead of on a counter-shaft or on the motor-shaft.

The organization of the defendant's clutch embraces the superimposed rotary members of the patents, the multiple friction discs of the patents, means for making contact by spring pressure and for breaking contact by exerting force in opposition to the spring pressure, not literally by the screw cam of the patents, but by another mechanism, which the defendant admits and we hold to be its equivalent.

As we view the organization of the defendant's clutch, it comprises all the elements of the claims of the second and third patents in suit arranged by a different positioning of the clutch on a motorcycle and by an inversion of parts to perform the same functions and produce the same results. While there are many differences between the infringing clutch and the clutches of the two patents in structural details, we see no difference in their fundamental elements or in the functions they perform. Therefore, we find infringement of the claims of the second and third patents in suit and direct that the decree below be reversed and that another decree be entered in accordance with this opinion.