## STEARNS-ROGER MFG. CO. v. GREENAWALT.
### No. 661.

Circuit Court of Appeals, Tenth Circuit.
Jan. 10, 1933.

that the invention has for its object the effective application of gases to liquids to accomplish certain results as, for example, the precipitation of metals from their solution by a gas, such as hydrogen sulfide, or in the flotation treatment of ores.

From a decree adjudging claims 9 and 10 of patent No. 446 and claims 10 and 11 of patent No. 500 valid and infringed, the Stearns-Roger Company has appealed.

The drawings in patent No. 500 are as follows:

Henry D. Williams, of New York City, and Carlos G. Stratton, of Denver, Colo. (G. Willard Rich and Giles S. Rich, both of New York City, on the brief), for appellant.

George L. Nye, of Denver, Colo. (Kenneth W. Greenawalt, of New York City, on the brief), for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a patent infringement suit brought by Greenawalt against the Stearns-Roger Manufacturing Company. Patent No. 1,374,500, hereinafter referred to as patent No. 500, was issued April 12, 1921, on an application filed October 30, 1915. Patent No. 1,374,446, hereinafter referred to as patent No. 446, was issued April 12, 1921, on an application filed October 16, 1918.

The specification of each patent states

The liquid or mineral pulp is placed in tank 1 and hood 2 is suspended in the tank by means of shaft 4 and is submerged in the liquid. Passages 3, described in the claims in suit as "attenuated passages," extend from the interior to the exterior of the hood through the walls and top thereof. Shaft 4 is vertically mounted on bearings 5 and is connected with the hood at its lower end and with pully 6 at its upper end. Sufficient power is applied to the shaft through pulley 6 to cause the shaft and suspended hood to rotate rapidly in the tank. Air is introduced into the hood by pressure through pipes 9 and 8. The rotation of the hood creates a vacuum which draws in the liquid from the tank. The rapidly rotating hood mixes the pulp and air and expels the mixture by centrifugal force through the small passages 3 into the liquid in the tank.

Claims 10 and 11 of patent No. 500 may be analytically stated as follows:

10. In apparatus for treating liquids with gases,
  (1) a tank adapted to contain the liquid,
  (2) a rotary atomizer
    (a) comprising a hollow body open at its lower end and
    (b) having attenuated discharge passages through its walls,
    (c) said hollow body being journaled in the tank and submerged in the liquid, and
  (3) means for admitting a regulable quantity of gas under pressure to the hollow body.

11. In apparatus for treating liquids with gases,
  (1) a tank adapted to contain the liquid,
  (2) an atomizer
    (a) comprising a hollow circular body submerged in the liquid and
    (b) having attenuated discharge passages through the walls thereof,
    (c) said hollow body having the lower portion of its interior in communication with the tank, and
  (3) means for introducing gas into the upper portion of the interior of said hollow body.

The drawings in patent No. 446 are as follows:

The liquid or mineral pulp is placed in tank 1. A hollow shaft 2 is mounted in bearings 3. An atomizer 5 is suspended in the tank by means of shaft 2 and is submerged in the liquid. There is communication between the interior of the tank and the interior of the atomizer by means of opening 9. Air is forced into the interior of the atomizer by means of impeller 4 and through hollow shaft 2. The rotation of the atomizer creates a vacuum in the interior thereof, and liquid from the tank and air through the hollow shaft are drawn into the hollow interior of the atomizer. Baffles 18 may be placed in the interior of the atomizer. The blades 8, Fig. 4, form openings between the interior and periphery of the atomizer. As the atomizer revolves, the interior edges of these blades and the edges of the baffles 18 impinge on the air and liquid revolving in the interior of the atomizer and cause a mixture thereof, and the rotation of the atomizer by centrifugal force ejects the mixture through the openings between the blades into the liquid in the tank.

The specification of patent No. 446 in part states:

"The gas passages, which extend from the interior to the exterior, or from the central portion of the atomizer toward its periphery, communicate with the hollow shaft; these gas passages may take the form of perforations as shown by 7, Figs. 4 and 5; of ducts of uniform cross section as shown by 17, Fig. 6, of ducts of variable cross sections as shown by 27, Fig. 7; or of both combined as shown in Figs. 4 and 5, where blades 8 are used in connection with the perforations 7. Blades 8 are arranged to assist in forcing the air, or, preferably, a mixture of air and liquid, toward the periphery, thus giving it a higher velocity impact in the liquid and consequent greater atomization, with a high rotary speed. The blades will also act to create a suction and assist the impeller in creating a flow of air through the shaft. The atomizer is preferably open to the liquid at the bottom, through the extension 9; in this way some of the liquid will be drawn into the atomizer, and, due to the blades 8, will be thoroughly mixed with the gas, and the mixture of gas and liquid expelled together through the gas passages 7 (or 17 and 27, Figs. 6 and 7, respectively)."

However, to effect an atomization of the pulp and air, there would have to be a considerable number of such passages and they would have to be relatively small.

Claim 9 of patent No. 446 may be analytically stated as follows:

9. In apparatus for treating liquids with gases,
    (1) a tank adapted to contain a liquid,
    (2) a gas impregnator within the tank having a hollow interior in communication with the liquid in the tank,
    (3) means for causing a flow of liquid in the tank into the interior of the impregnator,
    (4) means for causing a flow of gas into the interior of the impregnator,
    (5) means in the interior of the impregnator for mixing the liquid and the gas, and
    (6) means for ejecting the mixture of gas and liquid into the surrounding liquid in the tank.

Claim 10 of patent No. 446 may be analytically stated as follows:

10. In apparatus for treating liquids with gases,
    (1) a tank adapted to contain a liquid,
    (2) a rotary atomizer having passages extending from its interior central portion toward its periphery suspended within the tank and submerged in the liquid,
    (3) a liquid inlet to the interior of the atomizer communicating with the passages and with the liquid in the tank,
    (4) a hollow shaft gas inlet communicating with the interior of the atomizer and with the atmosphere above the liquid,
      (a) said liquid inlet and gas inlet being proportioned and arranged so as to
      (a¹) cause a flow of both gas and liquid into the interior of the rotary atomizer and
      (a²) eject both gas and liquid through the passages of the rotary atomizer into the surrounding liquid in the tank.

The alleged infringing device is illustrated by the following drawings:

Labels in the diagram: Weir-Containing Chamber, Froth Crowder, Impeller Shaft, Froth Skimming Paddle, Weir Compartment, Tailings Overflow From Weir Compartment, Froth Overflow Lip, Weir, Flotation Zone or Compartment, All-Tailings Outlet From Flotation Compartment, Lattice-Grid Baffle, Vertical Baffle, Vertical Baffle, Agitation Zone or Compartment, Sand Hole-Sands Outlet From Weir Compartment, Impeller, Front Plate Removable For Cleaning, Tailings Outlet On Last Cell Only, Cleaning Plug On Other Cells, Pulp-Supplying Passageway, Air Pipe

## PLAN OF LATTICE-GRID BAFFLE

## PLAN OF VERTICAL BAFFLES

This is a device for separating metalliferous minerals from rock by flotation. In general the process is as follows: The ore is so finely ground that the metalliferous mineral and the rock or gangue, with which it was associated in the ore, are reduced to distinct particles. The ground ore is mixed with sufficient water to produce a pulp which will flow freely. A mineral frothing agent is added. Air is forced through the pulp forming diffused air bubbles. These air bubbles select and attach to themselves metalliferous particles, and reject gangue particles, and because of their buoyancy carry the metalliferous particles upward through the pulp and form into a metal bearing froth floating upon the surface of the pulp. This metal bearing froth, called concentrate, floats or is skimmed from such surface and the remainder of the pulp, called tailings, passes into the next unit.

The alleged infringing device is designed to carry out this process in its entirety. The patents in suit when applied to such process are designed only to carry out one step therein, namely, the aëration of the pulp.

The impeller is composed of two circular discs 21 inches in diameter. Between these discs are four radial blades each positioned at an angle of 45 degrees to the vertical so as to tend, when rotating, to throw the pulp upward. These blades extend outward from points a short distance outside the vertical center of the impeller and terminate at the outer periphery of the discs. The lower disc has an opening in its center with a downward and outwardly flaring rim. There

is thus formed in the center of the impeller an open space or central chamber completely closed at the top, open at the bottom, and bounded at its sides by the inner ends of the four radial blades, and openings between such blades extending from such central chamber to the periphery of the impeller. The area of the inner end of the latter openings is 14 square inches and of the outer end 54 square inches. This impeller is rotated by means of the impeller shaft and force applied thereto. Air and pulp are drawn into the central chamber through opening 1, as indicated by the arrows, and expelled through the opening between the blades against the sides of the agitation compartment by means of the centrifugal force of the rotating impeller, thereby causing a mixture of the air and pulp. This mixture of air and pulp is also forced upward by such centrifugal force into the flotation compartment above the lattice grid baffle, where separation takes place, and the froth passes out over the froth overflow, and the gangue over the weir into the next unit, where the process is repeated. A partial mixture of the air and pulp is accomplished by the cascading of the pulp from the top of the bottom of the unit before it enters the impeller. The ends of the blades impinging on the pulp and air in the central chamber will also cause some mixing. The principal mixing, however, takes place as the air and pulp pass between the radial blades and are thrown out from the impeller and forced up through the baffles.

In the prosecution of patent No. 500, on June 12, 1920, claims 10 and 11 were inserted by amendment in the following form:

"10. In apparatus for treating liquids with gases, a tank adapted to contain the liquid, a rotary atomizer comprising a hollow body open at its lower end and having discharge passages through its wall, said hollow body being journaled in the tank and submerged in the liquid, and means for admitting a regulable quantity of gas under pressure to the hollow body.

"11. In apparatus for treating liquids with gases, a tank adapted to contain the liquid, an atomizer comprising a hollow circular body submerged in the liquid and having discharge passages through the wall thereof, said hollow body having the lower portion of its interior in communication with the tank, and means for introducing gas into the upper portion of the interior of said hollow body."

These claims were rejected on the patent of Burgess on August 31, 1920, the Examiner saying: "Each of claims 10, 11 * * * is rejected on the patent to Burgess of record. This reference shows every element recited in the above claims."

The Burgess patent is for a device for subjecting liquids to the action of gases. The gas is ejected into the liquid in a tank by centrifugal force through large pipes mounted on a revolving shaft and submerged in the liquid.

To avoid this reference, the applicant on October 6, 1920, amended the claims by inserting the word "attenuated" before the words "discharge passages" in each of such claims and submitted with the amendment the following statement:

"The inclusion of the word 'attenuated,' however, further distinguishes and converts applicant's rotary member into the atomizer which it is styled, producing results which the large pipes of Burgess could never secure."

The New Century dictionary defines "attenuate," as follows: "To make thin; to make slender or fine; reduce in density; dilute."

Webster defines it as follows: "To make thin or slender as by mechanical or chemical action; to make thin or slender or less consistent; to render less viscid or dense; to rarify."

Counsel for Greenawalt contend that "attenuated" was used in these claims in the sense of reduced in density and means that the mixture expands as it passes out through the passages because they are larger at the outer than they are at the inner end. It will be noted that the claims use the phrase, "attenuated passages," and not "attenuating passages." The word attenuated describes not the effect on the mixture, but the character of the opening. Counsel's contention is untenable when consideration is given to the language used and the facts surrounding the amendment.

We conclude that the word was used in the sense of thin or slender, to distinguish the passages from the large pipes in the Burgess device.

In Hubbell v. United States, 179 U. S. 77, 21 S. Ct. 24, 25, 45 L. Ed. 95, the court said:

"An examination of the history of the appellant's claim, as disclosed in the file wrapper and contents, shows that, in order to get his patent, he was compelled to accept one with a narrower claim than that contained in his original application; and it is well settled that the claim as allowed must

be read and interpreted with reference to the rejected claim and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the Patent Office or disclosed by prior devices. Leggett v. Avery, 101 U. S. 256, 25 L. Ed. 865; Shepard v. Carrigan, 116 U. S. 593, 6 S. Ct. 493, 29 L. Ed. 723; Knapp v. Morss, 150 U. S. 221, 227, 14 S. Ct. 81, 37 L. Ed. 1059, 1061."

See, also, Royal Co. v. Tweedie (C. C. A. 8) 276 F. 351; Cotto-Waxo Chemical Co. v. Perolin Co. of America (C. C. A. 8) 185 F. 267; Robbins v. Ira M. Petersime & Son (C. C. A. 10) 51 F.(2d) 174.

The large openings between the blades extending from the central chamber to the periphery of the impeller in the alleged infringing device are not small or attenuated passages. Neither do they eject the pulp and air in the form of a fine spray. The impeller is not an atomizer. It aërates the pulp by the beating effect of the blades and by discharging it with great force against the sides of the agitation compartment.

■■■ Each element of a combination of claims is conclusively presumed to be material. Hubbell v. United States, 179 U. S. 77, 82, 21 S. Ct. 24, 45 L. Ed. 95; McClain v. Ortmayer, 141 U. S. 419, 425, 12 S. Ct. 76, 35 L. Ed. 800; Wichita Visible Gasoline Pump Co. v. Clear Vision Pump Co. (C. C. A. 8) 19 F.(2d) 435, 436, 437. And there is no infringement if one of the elements described by the patentee as essential is omitted without substitution of an equivalent. Hyman v. F. W. Woolworth Co. (C. C. A. 8) 28 F.(2d) 833, 837, 838; Jewell Filter Co. v. Jackson (C. C. A. 8) 140 F. 340, 347; Union Water-Meter Co. v. Desper, 101 U. S. 332, 337, 25 L. Ed. 1024; Knapp v. Morss, 150 U. S. 221, 228, 229, 14 S. Ct. 81, 37 L. Ed. 1059; The Corn Planter Patent, 23 Wall. 181, 219, 23 L. Ed. 161; Cimiotti Unhairing Co. v. American Fur Ref. Co., 198 U. S. 399, 410, 25 S. Ct. 697, 49 L. Ed. 1100.

We conclude that the alleged infringing device omits the attenuated passages as limited by the amendment to claims 10 and 11 of patent No. 500, and does not substitute an equivalent therefor, and that it does not infringe such claims.

■■ Elements 2, 3, and 4 of claim 10 of patent No. 446 are (2) a rotary atomizer having passages extending from its interior central portion toward its periphery suspended within the tank and submerged in the liquid, (3) a liquid inlet to the interior of the atomizer communicating with the passages (of the atomizer) and with the liquid in the tank, and (4) a hollow shaft gas inlet communicating with the interior of the atomizer and with the atmosphere above the liquid.

Elements 2, 3 and 5 of claim 9 of patent No. 446 are (2) a gas impregnator within the tank having a hollow interior in communication with the liquid in the tank, (3) means for causing a flow of liquid in the tank into the interior of the impregnator, and (5) means in the interior of the impregnator for mixing the liquid and gas.

"Impregnator," in the sense it is used in claim 9 when read in the light of the specification, means atomizer.

Webster defines "atomize" as follows: "To reduce to atoms, or to a fine spray." An atomizer, as applied to liquids, is a device that reduces them to a fine spray. The impeller in the alleged infringing device does not reduce and expel the liquid in the form of a fine spray. It is not an atomizer.

It will be noted that the liquid is placed in the tank and the atomizer or impregnator suspended in the tank and submerged in the liquid. Hence the necessity for the element —a liquid inlet from the tank to the interior of the atomizer. In the alleged infringing device the liquid is introduced into the central chamber of the impeller from outside of the tank. Such chamber is not in communication with the liquid in the tank. There is no liquid inlet between such chamber and the tank and no means for causing a flow of liquid in the tank into such chamber.

In the alleged infringing device the gas is introduced from the outside through the pulp inlet or through the air pipe from the bottom of the device, and not through a hollow shaft gas inlet communicating with the atmosphere above the liquid, as in claim 10.

The alleged infringing device does not have, in the sense the phrase is used in claim 9, a "means in the interior of the impregnator for mixing the liquid and gas." Counsel for Greenawalt urge that the central chamber and the inner ends of the blades constitute such means, but we think that phrase as used in claim 9 refers to the baffles 18.

Finally, the means employed in the alleged infringing device for aërating the pulp operates on a different principle from that disclosed by claims 9 and 10. In a device constructed under the latter, aëration is to be effected by bringing the pulp and air in contact with the edges of the inner ends of the small passages or openings through the walls of the revolving atomizer and the baffles, and

by forcing them in the form of a fine spray through such small passages into the liquid in the tank and thereby producing atomization. The former effects aëration through the beating effect of the blades and by discharging it in the form of a large stream with great force against the sides of the agitation compartment.

We conclude that the alleged infringing device omits essential elements of claims 9 and 10 and substitutes no equivalents therefor, and employs a different principle from the device disclosed by such claims, and that it does not infringe.

The decree is reversed.