**ETTEN et al. v. KAUFFMAN et al.**

No. 7528.

Circuit Court of Appeals, Third Circuit.

June 17, 1941.

See, also, 25 F.Supp. 215.

H. C. Lord, of Erie, Pa., for appellants.

Joseph H. Milans, of Washington, D. C. (Brooks, Curtze & Silin, of Erie, Pa., and Tefft & Tefft, of Chicago, Ill., on the brief), for appellees.

Before MARIS, JONES, and GOOD-RICH, Circuit Judges.

JONES, Circuit Judge.

The plaintiffs brought suit in the District Court under R.S. 4915, 35 U.S.C.A. § 63, seeking to obtain an adjudication that they are legally entitled to have a patent issue for an alleged invention in accordance with the claims in Etten application No. 648,409, filed December 22, 1932. Interference proceedings in the Patent Office between Etten, of The Chamberlain Corporation, and Kauffman, of Lovell Manufacturing Company, developed two interfering Kauffman applications (Nos. 621,- 921 and 621,922), both filed July 11, 1932. The Patent Office awarded priority of invention to Kauffman and refused Etten's application.

In the suit now before us, the defendants (Kauffman and Lovell Manufacturing Company) filed a counterclaim, charging the plaintiffs with infringement of certain specified claims in Webster Patent No. 1,- 439,655, Gehrlein Patents Nos. 1,709,071 and 1,709,125, Schuda Patent No. 1,709,098 and Kauffman Patents Nos. 2,065,329 and 2,065,330. All of these patents relate to the washing-machine-wringer art and, particularly, to safety devices incorporated in wringers for the speedy release of the pressure on the wringer rolls and for the disengagement of the rolls in cases of emergency. The Etten application covers a device of similar nature. In the main, all of the wringers comprise a frame, co-operating wringer rolls set in the frame, a top bar for sealing the rolls and mechanism in place, a tension spring between the top bar and the rolls, and a device for adjusting and regulating the degree of pressure to be imparted by the spring to the rolls. The top bars are removable or displaceable in varying ways according to the particular designs. Such action allows for the immediate release of the tension upon the rolls. However, the concern of the art, as evidenced by the many patents and applications, has been not only the ready release of the main spring tension but also the freeing of the rolls from engagement so as to permit the rolls to spread apart readily from slight pressure between them.

The court below held that the plaintiffs had not established their right to a pat-ent for an alleged invention according to the Etten application and dismissed their bill of complaint. As to the defendants' counterclaim, the court found that the specified claims of the Webster patent and of the Gehrlein patents are invalid; that the specified claims of the Kauffman patents are invalid, and if not invalid, are not infringed; and that, of the specified claims in the Schuda patent, claim 1 is not infringed and claims 9 and 10 are invalid. The court dismissed the defendants' counterclaim and entered a decree effectuating its adjudication, at the same time withholding the award of any costs to either party. The pending appeal by the defendants is from that portion of the decree below which adjudicates with respect to claims 1, 9 and 10 of the Schuda patent. Nothing else is before us.

In the Schuda patent, a disclosure of a prior patent (Misner No. 1,453,568) is utilized as the means for releasing the spring pressure.[1] The top bar of the Schuda wringer engages the lower or rigid frame by means of hooks which swing from the top bar into notches in the lower frame. The hooks are double and straddle the spring. As the spring, upon being released, thrusts upward, it hits the upper part of the hook, exerting leverage thereon, so that the hooks become disengaged from the notches in the lower frame and release the top bar and upper roller from the lower frame. The upper roller is lifted by means of straps which extend from the shaft of the roller to the bolt holding the hook. The effect of this "relay release" is to disengage entirely the top structure from the frame and the bottom roller. It is claimed for the Schuda patent that the "relay release" obviates a violent upswing and that, because of the disengagement feature, the necessity otherwise for a high rigid frame surrounding the whole of the wringer is avoided. These features, it is said, are new in the art. However, it is unnecessary for us to consider the validity of Schuda's claim 1 unless we are convinced that the learned court below erred in holding that the claim is not infringed by the plaintiffs' structure.

Claim 1 of the Schuda patent reads as

---

[1] In Misner Patent No. 1,453,568, the release works on a shaft with lugs which engage under an interrupted base. The lugs of the shaft enter an aperture and, as the shaft handle is turned, the lugs are thrust downward. Operation of the safety device is accomplished by hitting the handle (which is at a right angle to the shaft), bringing the lugs around to the channels in the base and thus freeing the engagement.

follows: "In a wringer, the combination of a frame; rolls mounted in the frame; tension means exerting pressure on the rolls; a safety release device releasing tension on the rolls; and a secondary release operated through the release of the tension device extending the release clearance of the rolls." The court below held that this claim is not infringed by the Etten structure because the latter discloses no "secondary or supplemental release-elements that correspond to the secondary release element of Schuda." The court found, and we think correctly, that, in the alleged infringing structure, there is "only a single release old in the art".

The Etten structure is made up of a top bar held in place at one end by a lug which engages in a slot on the upper and outer part of a side-stile. The other end is engaged in the opposite side-stile of the frame by means of a hinging hook which extends outwardly from the side-stile and curves over the shoulder of the channeled housing of the top bar. Where this hook curves over the shoulder, a retaining member under spring tension holds it in place. When the retaining member is tripped off the hook, the release of the hook follows. This is accomplished by means of outside trip arms which contact triggers on the inside of the top bar housing. These triggers extend to the member retaining the hook and lift it so as to free the hook. The tension of the wringer spring is thereupon released and the arm is lifted upward at the end where the hook is located. The lifting motion at one end of the top bar causes the other end lug to become disengaged and thus the top bar is freed to the extent permitted by straps which, in addition to limiting the movement of the top bar when freed, aid in lifting the top roller.

■ In the Etten structure, the wringer spring does not operate to trip the hook, as in the case of the Schuda patent. The function of the release of the wringer spring in Etten merely completes a disengagement already begun by an independent device. In claim 1 of the Schuda patent, quoted above, an element or ingredient of the combination advanced by the patentee is the "secondary release operated through the release of the tension device extending the release clearance of the rolls". As has already been pointed out, release is gained in the alleged infringing structure by a trip, whose action is not set in mo-

tion by the wringer spring. After the release, the wringer spring then serves to thrust upward the one shoulder of the top bar, thereby also sliding the opposite shoulder so as to free it of its engagement to the side-stile. Release of the wringer spring tension in the Etten structure does not serve to do any more than raise the top bar, whereas in Schuda the wringer spring, when its tension is released, comes into contact with levered hooks and trips them so as to bring about the rollers' disengagement. The court below was therefore correct in its conclusion that the alleged infringing structure has no "secondary or supplemental release-elements that correspond to the secondary release element of Schuda".

■ Fundamentally, the Etten apparatus omits the disengagement of the hook by released spring tension. The Etten safety device is operated by manual release of the hook by means of a trip. The release of the hook frees the spring and at the same time and in the same motion releases the opposite end of the top bar. Schuda, on the other hand, is operated (1) by manual release of spring tension and (2) by another release secondary to the release of the spring. Etten has one means of holding all tension, i. e., the hook and its opposing lug engagement, while Schuda has spring tension and hooks, both of which must be released in primary and secondary sequence in order to free the top roller pressure. Etten's omission of an element or ingredient of a combination covered by the Schuda patent relieves him of the charge of patent infringement. In a combination patent every element claimed is deemed to be material to such an extent that evidence to the contrary is not admissible. Vance v. Campbell et al., 1 Black 427, 429, 66 U.S. 427, 429, 17 L.Ed. 168; Stearns-Roger Mfg. Co. v. Greenawalt, 10 Cir., 62 F.2d 1033, 1039, and cases there cited. It was stated in an early case that "The end in view [i. e. of the patent] is proposed to be accomplished by the union of all, arranged and combined together in the manner described. * * * The use of any two of these parts only, or of two combined with a third, which is substantially different, in form, or in the manner of its arrangement and connection with the others, is, therefore, not the thing patented. It is not the same combination, if it substantially differs from it in any of its parts." Prouty and Mears

v. Draper, Ruggles & Co., 16 Pet. 336, at page 341, 10 L.Ed. 985. See, also, Black Diamond Coal-Mining Co. v. Excelsior Coal Co., 156 U.S. 611, 618, 15 S.Ct. 482, 39 L.Ed. 553. Cf. Jensen-Salsbery Laboratories, Inc., v. O. M. Franklin Blackleg Serum Co., 10 Cir., 72 F.2d 15, 18. The rule has been restated a number of times and always to the same effect except for the qualification that the addition of an equivalent for the omitted element will not avoid infringement if the equivalent comes within the range of those allowable to the original patentee. See Montgomery Ward & Co., Inc., v. Rogers et al., 4 Cir., 100 F.2d 721, 722; Bailey v. Galion Iron Works & Mfg. Co., 4 Cir., 80 F.2d 805, 807, and cases there cited; Ladd v. W. & H. Walker, Inc., et al., 3 Cir., 7 F.2d 72, 77, and cases there cited. Here, the combination claimed by Schuda forms an entity, and in the Etten structure, as the court below correctly found, one of the important elements claimed by Schuda is omitted.

■ It may be argued that, in effect, what Etten did was to change the relative position of the functional parts and that, thereby, he did not avoid infringement. See Walker on Patents, Deller's Ed., § 463, and cases there cited. While this is true where merely a change in the relative position of elements or functional parts is involved, yet, where the change in position so alters the functions of the parts that there is thus obtained a substantial change in the mode of operation, infringement is avoided, although the same ultimate result be obtained. Brooks et al. v. Fiske et al., 15 How. 212, 221, 222, 14 L.Ed. 665; Eclipse Machine Co. v. Harley-Davidson Motor Co. et al., 3 Cir., 252 F. 805, 813; Simplex Window Co. v. Hauser Reversible Window Co., 9 Cir., 248 F. 919, 926; Walker on Patents, cited supra. In the instant case, there was a substantial change in operation as we have already seen.

■ The appellants rely strongly upon Smith v. Snow et al., 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721 (patent later held invalid in Smith v. Hall et al., 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049, for reason not here material). No doubt, the Snow case is urged upon us to show that the court below erred in restricting the Schuda claims to the disclosures of the patent. It is true that in the Snow case some latitude to the claims was allowed, but the infringing structure in that case so clearly utilized what would be a mode of operation of the patentee's structure that the course adopted by the court was inescapable. See Smith v. Snow, supra, 294 U.S. pages 9, 11, 12, 55 S.Ct. 279, 79 L.Ed. 721. Furthermore, the doctrine of equivalents which gives to a patentee the benefit of his monopoly in every form in which it may be copied in the absence of manifest disclaimer (see Western Electric Co. v. La Rue, 139 U.S. 601, 606, 11 S.Ct. 670, 35 L.Ed. 294) is unavailable to the plaintiff. The range of equivalents, which a patentee has, can in no event be more than commensurate with the scope of his invention. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 415, 28 S.Ct. 748, 52 L.Ed. 1122. The demarcation between the right to a wide range of equivalents and restriction to a narrow range depends upon whether the invention is a pioneer or one which is but a change in an extensively developed prior art. See Westinghouse v. Boyden Power Break Co., 170 U.S. 537, 561, 18 S. Ct. 707, 42 L.Ed. 1136. It has been said that "the great majority of patents falls between these two extremes * * * and in determining questions concerning them the breadth of the signification of the term is proportioned in each case to the character of the advance or invention evidenced by the patent under consideration, and is so interpreted by the courts so as to protect the inventor against piracy and the public against unauthorized monopoly." National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 8 Cir., 106 F. 693, 711. The learned court below was justified in concluding that "none of these patents can in any sense be classed as pioneer patents", and therefore properly limited the patent to the precise elements shown therein. See Computing Scale Co. v. Automatic Scale Co., 204 U.S. 609, 621, 27 S.Ct. 307, 51 L.Ed. 645.

■ Assuming the validity of Schuda's patent, a finding that it is infringed by the Etten structure would call for a range of equivalents far broader than Schuda may claim, and, even then, there would still be wanting the "like mechanical co-operation" (Dowagiac Mfg. Co. v. Brennan & Co. et al., 6 Cir., 127 F. 143, 147) requisite where the alleged infringement is based upon the use of an equivalent. See Sanitary Refrigerator Co. v. Winters et al., 280 U. S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147; Stewart-Warner Corp. v. Jiffy Lubricator Co., 8 Cir., 81 F.2d 786, 793; Walker on Patents, Deller's Ed., §§ 466, 468, and cases

there cited. As we have seen, Etten's structure accomplishes its operation in a manner which differs materially from that followed by Schuda.

We agree with the court below that the ·Etten structure does not infringe claim 1 of the Schuda patent.

Claims 9 and 10 of the Schuda patent are identical in wording [2] except for the fact that claim 9 specifies the latches, therein referred to, as being "housed within the top rail", while claim 10 calls for them to be "mounted within the top rail". This slight difference in phraseology does not connote a difference in fact and fails to differentiate the claims. If, therefore, one claim is invalid, the other must be invalid also. The effect of each claim (9 and 10) is to bring within patent coverage only the features of the housing for the release mechanism, the latches being elements of the secondary release in claim 1. It is said for the Schuda patent that the advantage of the housing for the release mechanism lies in the fact that it makes a better finish and eliminates danger from, contact with the mechanism. However that may be, claims 9 and 10 are lacking in invention.

■■■■■ One of the requisites of patentability is that the alleged invention be novel. Walker on Patents, Deller's Ed., § 47. Claims 9 and 10 do not so qualify. The prior art reveals a structure (Woodrow) which utilizes an enclosed channeled top bar. The appellants concede as much but to avoid the anticipation supplied by the Woodrow structure, they point out that since it (the Woodrow structure) was intended as a safety release, it should function consistently at all times and that this the Woodrow structure failed to do when there was some "unusual condition" attending, such as "something real heavy" in the wringers. Yet, the fact remains that the Woodrow structure had a channeled housing. This fact, taken in conjunction with the finding of the trial judge that the "alleged improvements disclosed in each and all of the patents are developments in a crowded art", deprives Schuda of any standing to claim novelty in the housing device covered by his claims 9 and 10. The conclusion of the court below to such effect is supported by substantial evidence and should not therefore be disturbed. Galion Iron Works & Mfg. Co. v. Beckwith, 3 Cir., 105 F.2d 941, 942. Furthermore, the contention of the appellants that the Woodrow structure was defective and therefore not a proper disclosure of prior art is not germane. (In passing, it may be noted that the evidence does not sustain the appellants' condemnation of the Woodrow housing structure.) All of the criticism leveled at the Woodrow device is directed at the undependability of its release and not at the housing of the top bar. Since no fault is found in the channeled housing of the Woodrow structure, it is no answer to the prior use, which it discloses, to say that the release mechanism, contained within the housing, is not entirely dependable. Schuda's device likewise utilizes the channeled top bar only for the housing purpose. Schuda's release is not claimed for in either claim 9 or 10. Inspection of the Woodrow structure discloses that the release mechanism there employed is a modification of the old Webster release (Patent No. 1,439,655). While this release is contained within the channeled top bar, it is still no more than a release mechanism. The top bar, in and of itself, marks a stage in the prior art which is anticipatory of the matter covered in Schuda's claims 9 and 10. If the proponents of the Schuda patent should insist that he utilizes the top bar as a new means of housing or mounting the latches or hooks, the claims would far outrun the alleged invention and be void as claiming "more than the applicant invented". Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008. See, also, Bassick Manufacturing Co. v. R. M. Hollingshead Co., 298 U.S. 415, 425, 56 S.Ct. 787, 80 L.Ed. 1251.

---

[2] Claims 9 and 10 of the Schuda patent read as follows:

"9. In a wringer, the combination of a frame comprising side stiles; rolls mounted in the side stiles; a top rail of flange construction extending over the top of the side stiles and housing the same; and latches housed within the top rail forming locking means between the top rail and the side stiles.

"10. In a wringer, the combination of a frame comprising side stiles; rolls mounted in the side stiles; a top rail of flange construction having down-turned ends extending over and housing the tops of the stiles; and latches mounted within the top rail forming locking means between the top rail and the side stiles."

142

 The court below properly concluded that claims 9 and 10 of the Schuda patent are invalid.

The judgment of the District Court is affirmed.